## S94A0295. LEWIS v. THE STATE.
(440 SE2d 664)

CARLEY, Justice.

Appellant was found guilty of two counts of murder but, on appeal, the case was remanded

in order to permit the prosecutor [to explain why two black potential jurors had been peremptorily stricken] and to allow the trial court to make findings under *Batson* [*v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986)].

*Lewis v. State*, 262 Ga. 679, 681 (2) (424 SE2d 626) (1993). On remand, a hearing was conducted and the trial court found "that the evidence submitted by the State . . . was sufficient to justify the exercise of the [two] peremptory challenges by the State at trial within the meaning of *Batson*, supra. . . ." It is from that order that appellant brings the instant appeal.

In exercising peremptory strikes against the two prospective ju-

rors, the State was shown to have relied upon the recommendation of the widow of one of the victims.

> Although the prosecuting attorney acts responsibly when he solicits or accepts input from colleagues, prosecuting witnesses, victims, and victims' family members concerning the exercise of peremptory challenges, the State does not fulfill its burden to provide racially-neutral reasons by stating that its peremptory challenges were exercised in deference to the wishes of an individual concerned about the case. In such a situation, the State must set forth a racially-neutral, case-related reason underlying the decision of the person to whom the prosecutor deferred.

*Lewis v. State,* supra at 681 (2).

The victim was black, as are his widow and appellant. Under controlling authority of the Supreme Court of the United States, this "tend[s] to undercut any motive to exclude [blacks] from the jury." *Hernandez v. New York,* ___ U. S. ___ (111 SC 1859, 1872, 114 LE2d 395) (1991). See also *Hill v. State,* 263 Ga. 37, 43 (9) (427 SE2d 770) (1993).

> However, this is not a factor which rebuts, as a matter of law, an otherwise prima facie case. It is merely *one* of the factors to be considered in determining whether the prima facie case has been rebutted. [Cit.]

(Emphasis in original.) *Smith v. State,* 263 Ga. 224, 226 (4) (430 SE2d 579) (1993).

At the hearing on remand in the instant case, the victim's widow attempted to explicate the reasons why she had recommended that the State exercise peremptory strikes against the two potential jurors. As to one of the potential jurors, she offered the following explanation: The potential female juror had, on several occasions, sought employment at the business establishment where the victim's widow held the position of personnel technician. The potential juror had never been hired. Although the hiring decisions had not been made by the victim's widow, her experience had been that "for some reason people seem[ed] to think that [she had] something to do with whether or not they get the job." In fact, she had actually been confronted by the prospective juror who "was upset because she had [mistakenly] thought she had gotten the job."

This shows that the victim's widow had a racially-neutral reason for her recommendation that the State peremptorily strike the prospective juror. The victim's widow was concerned that the prospective juror might harbor some resentment against her for employment-re-

lated reasons and that that possible resentment might adversely affect the objectivity of the prospective juror. A peremptory strike may be exercised "from mistake, or from ignorance, or from idiosyncrasy." *Gamble v. State*, 257 Ga. 325, 326 (2) (357 SE2d 792) (1987).

> The explanation "need not rise to the level justifying exercise of a challenge for cause," but it must be "neutral," "related to the case to be tried," and a " 'clear and reasonably specific,' explanation of [the] 'legitimate reasons' for exercising the challenges." [Cit.]

*Gamble v. State*, supra at 327 (5).

As to the male prospective juror, the victim's widow could not recall the exact reason why she had recommended that the State exercise a peremptory strike. Since the trial had been held 18 months prior to the hearing on remand, she testified that she might "have to see [the prospective juror again] to actually remember what it was at that particular moment." The prospective juror "may have looked familiar for some reason. . . ." "It could have been that [she] may have seen him in [her] job or . . . something similar, but it had nothing to do with the fact that he was black." Although this explanation was less positive and less explicit than that given by the widow as her reason for wanting to strike the female prospective juror, the rationale appears to be the same. With respect to both prospective jurors, the widow was concerned that because she had some contact with a juror which was business related, the prospective juror might be prejudiced against her and, therefore, against the State's case. While the widow's concern may have been the result of her "mistake," "ignorance," or "idiosyncrasy," it was certainly racially-neutral.

Although this explanation may be characterized as "relatively weak," it does not necessarily follow that the trial court erred in finding that it was otherwise sufficient.

> The explanation offered for striking each black [prospective] juror must be evaluated in light of the explanations offered for the [State's] other peremptory strikes . . . . The persuasiveness of a proffered explanation may be magnified or diminished by the persuasiveness of companion explanations. . . . A court charged with the duty of determining whether the prosecutor has rebutted a prima facie case may be less troubled by one relatively weak explanation for striking a black [prospective] juror when all the remaining explanations are persuasive than where several of the prosecutor's proffered justifications are questionable.

*Gamble v. State*, supra at 327 (5). See also *Hill v. State*, supra at 42

(9). Considering the persuasiveness of the non-racial explanations for the exercise of all of the other peremptory strikes,

> we hold that, notwithstanding the relatively "weak explanation" given for striking this particular juror, it was sufficient and that the trial court did not err in concluding that, as to all black prospective jurors eliminated by peremptory strikes, the State rebutted appellant's prima facie *Batson* showing.

*Bess v. State*, 187 Ga. App. 185, 187 (1) (369 SE2d 784) (1988).

*Judgments affirmed. All the Justices concur, except Benham, P. J., and Sears-Collins, J., who dissent.*

SEARS-COLLINS, Justice, dissenting.

The majority concludes that the victim's widow's explanation for striking the male prospective juror was weak but sufficient. However, it seems clear to me that the widow offered no explanation within the meaning of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

*Batson* requires the prosecutor's explanations to be "clear and reasonably specific." Id. at 98, fn. 20. Moreover, the prosecutor may not "rebut the defendant's case by denying that he had a discriminatory motive." Id. at 98. Here, the widow's statement that the strike "had nothing to do with the fact that he was black" is merely the denial of a discriminatory motive and may not be used to rebut the prima facie case. The widow also stated that the juror "may have looked familiar for some reason" and that "[i]t could have been that [she] may have seen him in [her] job or . . . something similar." Considering these comments in light of the widow's statement that she needed to see the juror to actually know why she struck him, it is clear that the widow did not really remember why she had recommended that the juror be stricken; she was merely casting about for *possible* reasons as to why she wanted the juror stricken, but could articulate no actual reason. In sum, the widow's statements do not amount to even a weak explanation for the strike. They are not "clear and reasonably specific" and, therefore, do not constitute an explanation at all under *Batson*.

I also take issue with the majority's statement that the fact that the victim, the victim's widow, and the appellant are black "tend[s] to undercut any motive to exclude [blacks] from the jury." Majority opinion at 101, quoting *Hernandez v. New York*, ____ U. S. ____ (111 SC 1859, 1872, 114 LE2d 395) (1991). In *Hernandez*, the United States Supreme Court listed the common ethnicity of the victim, the prosecuting witnesses, and the defendant as a factor on which the

trial court might have relied to credit the prosecutor's sincerity that he did not engage in purposeful discrimination.[1] We then relied on this evidentiary tool in *Hill v. State*, 263 Ga. 37, 43 (9) (427 SE2d 770) (1993), a case which I authored. Upon further reflection, however, I believe we should disavow the use of this principle.

Initially, I note that this evidentiary principle does not appear to be part of a federal equal protection doctrine that would be binding on this Court, but is simply a statement of an evidentiary principle that may be used by state courts. Moreover, even if it were part of federal equal protection doctrine, this Court is free to provide greater protection to a defendant or juror under our own Constitution than the United States Supreme Court does under the United States Constitution, and I would do so in this instance. Simply put, the fact that the involved parties are all black or of other ethnic or racial backgrounds does not necessarily mean, as is presumed in *Hernandez*, that a lawyer will not strike jurors for improper racial reasons. Some prosecutors may, for example, feel that blacks are more lenient on defendants than whites. They should not be able to strike all of the blacks from a panel based on this improper motivation and then rely, in even a small way, on the fact that the victim was black as a factor to support the conclusion that the strikes were not racially motivated. As another example, suppose a black person killed a prominent figure in the black community. Should the prosecutor be able to strike blacks from the jury solely because of their race and then rely on the fact that the victim and defendant are both black as a factor to support his position that he did not strike out of improper motives?[2] The answer is clearly no. For these reasons, I believe the evidentiary principle set forth in *Hernandez* is based on a faulty foundation, and should not be followed.

For the foregoing reasons, I dissent to the majority opinion. I am authorized to state that Presiding Justice Benham joins in this dissent.

---

[1] This evidentiary principle was thus used in step three of the *Batson* analysis. In step one, the defendant must establish her prima facie case that the prosecutor has exercised his challenges on the basis of race. *Hernandez*, 111 SC at 1866. In step two, the prosecutor must offer race-neutral explanations for the strikes. Id. In step three, "the trial court must determine whether the defendant has carried [her] burden of proving purposeful discrimination." Id.

[2] Although I have given examples involving prosecuting attorneys because this case involves a criminal appeal calling into question a prosecutor's strikes, similar examples could be given for defense lawyers or lawyers in civil cases.

DECIDED MARCH 14, 1994 —
RECONSIDERATION DENIED MARCH 31, 1994.

*L. Clark Landrum, Herbert W. Benson,* for appellant.

*C. Paul Bowden, District Attorney, Gary C. McCorvey, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Rachelle L. Strausner, Staff Attorney,* for appellee.