## S95A1766. MARSHALL v. THE STATE.
### (466 SE2d 567)

THOMPSON, Justice.

Shone Marshall was convicted by a jury of felony murder with the underlying felony being aggravated assault; possession of a firearm by a convicted felon; and carrying a concealed weapon. He appeals from the judgment of conviction and sentences entered thereon, and from the denial of his motion for new trial.[1]

Marshall was playing cards for money with a group of men, including Gregory Wilson and Reginald Shepherd, in the parking area of a "juke joint." Although Shepherd won the game, Marshall grabbed the cash. Others in the group admonished Marshall to give the money to Shepherd. According to the testimony of an eyewitness, Marshall stepped back from the group and left the area, stating that "he will be back." When he returned fifteen minutes later, one of the men accused him of having gone home to get a gun. Marshall denied that he had a gun. The card game continued, and an argument ensued between Marshall and Shepherd, during which Marshall threatened to shoot Shepherd. Marshall then produced a gun, and stated, "Yeah, I've got a gun and I'll use it," whereupon he shot at Shepherd. The bullet grazed Shepherd's head and lodged in Wilson's head, killing him. Marshall placed the gun to Shepherd's head and again attempted to shoot him, but the weapon failed to discharge. Three eyewitnesses testified to the events.

1. Having reviewed the evidence in a light most favorable to the verdict, we conclude that a rational trier of fact could have found Marshall guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Marshall asserts that the trial court erroneously denied his *Batson* objection to the prosecutor's use of four of its five peremptory strikes to exclude African-American jurors. The State proffered the following reasons for rejecting these jurors: (1) A female juror was related by marriage to the defendant. (2) A male juror was struck at the request of the victim's family because he had engaged in business with the defendant and his family. (3) According to the victim's fam-

---

[1] The crimes occurred on March 26, 1992; Marshall was indicted on April 15, 1992. Trial was held on November 9-11, 1992, and a verdict was returned on November 11, 1992. Marshall was sentenced on December 2, 1992 to life imprisonment for felony murder and to concurrent terms of five years and twelve months, respectively, for the offenses of possession of a firearm and carrying a concealed weapon. A motion for new trial was filed on January 4, 1993, and amended on April 5, 1995. The motion, as amended, was denied on May 30, 1995. A timely notice of appeal was filed on July 6, 1995 pursuant to the trial court's grant of an extension of time. The case was docketed in this Court on August 3, 1995; oral argument was heard on October 17, 1995.

ily, a male juror who denied knowing the defendant, was in fact acquainted with him, and the juror's failure to acknowledge this acquaintance was troublesome to the victim's family and to the prosecutor. (4) A female juror's grandmother was related to the defendant's grandfather.

While the prosecutor relied in part upon information provided by the victim's family, he also articulated racially-neutral, case-related reasons for the exercise of his peremptory challenges. The trial court correctly determined that the State had rebutted defendant's prima facie showing of discriminatory intent. See *Lewis v. State*, 264 Ga. 101 (440 SE2d 664) (1994).

3. Marshall challenges the use of his custodial statements at trial. At a *Jackson v. Denno* hearing conducted prior to trial, the State established through the testimony of the investigating officers that Marshall was taken into custody on the day of the shooting, *Miranda* warnings were administered, and after executing a written waiver of rights, Marshall agreed to give a tape-recorded statement. On the following day, he was again advised of his *Miranda* rights, signed another written waiver, and agreed to talk to the officers. About an hour later, he was asked to give a second taped statement; he agreed and *Miranda* warnings were again administered. The officers were in agreement that Marshall was promised no benefit nor was he threatened with injury to induce his statements, and at no time did he request the assistance of counsel.

Marshall acknowledged at the *Jackson v. Denno* hearing that *Miranda* warnings had been administered, that he understood his rights, and that he agreed to sign the waiver and speak with the officers. There is no contention that he invoked his right to counsel. He submits, however, that he was "badgered" by the officers into giving the second statement, and that his responses were based on the officers' suggestions.

Crediting the officer's testimony, the trial court ruled that Marshall's statements were freely and voluntarily made.[2] See *Gober v. State*, 264 Ga. 226 (2) (b) (443 SE2d 616) (1994). " 'Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal.' [Cit.]" *Brown v. State*, 259 Ga. 453 (2) (b) (383 SE2d 882) (1989). The trial court's ruling was not clearly erroneous.

4. Any error in the trial court's failure to limit cross-examination during the *Jackson v. Denno* hearing to issues of voluntariness was

---

[2] Since Marshall admitted that he had been informed of and executed a knowing and intelligent waiver of his *Miranda* rights, and there was no assertion that he invoked his right to counsel, we find no harmful error in the trial court's failure to make findings in this regard. Compare *Berry v. State*, 254 Ga. 101 (326 SE2d 748) (1985).

harmless because Marshall was not cross-examined during trial concerning any testimony improperly elicited during the *Jackson v. Denno* hearing.

5. Marshall contends the trial court committed reversible error in failing to administer the jury oath as required under OCGA § 15-12-139. The record reveals that the appropriate oath was given during the prosecutor's opening statement, but before the introduction of any evidence, and that no objection to the procedure was interposed. Absent a showing of actual prejudice we will not reverse the conviction because opening statements were commenced prior to administering the oath, where no objection was made below. See generally *Gober v. State*, 247 Ga. 652 (2) (278 SE2d 386) (1981) (failure to administer the jury oath as required by OCGA § 15-12-132 does not amount to reversible error absent a showing of actual prejudice and where no objection was made below). Compare *Slaughter v. State*, 100 Ga. 323 (28 SE 159) (1897) (total failure to administer any oath cannot be waived).

6. The court did not violate the proscriptions of OCGA § 17-8-57, when it ruled that the medical examiner and a GBI micro-analyst were experts in their respective fields. Both witnesses were questioned by the prosecutor concerning their extensive education, training and experience, and both were shown to be long-term employees of the State crime lab. Defendant declined the opportunity to voir dire the witnesses concerning their qualifications, and voiced no objection concerning the court's ruling. The court properly exercised its discretion in qualifying both witnesses as experts. See OCGA § 24-9-67; *Redd v. State*, 240 Ga. 753 (2) (243 SE2d 16) (1978).

7. Marshall asserts that it was error to admit into evidence for lack of foundation a 9 millimeter shell jacket and lead core, which had been removed from the victim during autopsy, because the autopsy report referred to a .38 caliber projectile. The exhibit was identified by the crime lab micro-analyst as the bullet recovered from the victim, and the chain of custody was properly established. Any disparity in the autopsy report was explained by the medical examiner who testified that upon retrieving a projectile during autopsy, he would routinely include in his report the "generic" type of bullet, and that he would refer to a 9 millimeter bullet as also a .38 caliber. The State established to a "reasonable certainty that the bullets tested and the bullets sought to be introduced are the same. . . ." *Stephens v. State*, 259 Ga. 820, 821 (3) (388 SE2d 519) (1990). The court did not abuse its discretion in admitting the evidence. Id.

8. During the State's case-in-chief, an investigating officer testified that after administering *Miranda* warnings and obtaining a written waiver, he had interviewed Marshall immediately prior to his second taped interview. In an oral statement to the officer, Marshall

disclosed that he left the card game to get more money and when he returned, Shepherd began "picking at him . . . it became a slight struggle, he [Marshall] backed up, pulled a gun and fired." Defense counsel moved for mistrial on the ground that he had not been furnished with the contents of that statement prior to trial, pursuant to his demand under OCGA § 17-7-210 (b).[3] The State responded that the oral statement was essentially contained in the taped interview which took place immediately after the conversation in issue, and which was furnished to defendant prior to trial. The trial court compared the contents of the two statements and determined that they were "similar in all material aspects" and that therefore the oral statement neither surprised nor prejudiced the defendant. This determination is supported by the evidence. Considering the statement in the context of the entire record, we find it highly probable that admission of the evidence did not contribute to the verdict. The motion for mistrial was properly overruled. See *Wallin v. State*, 248 Ga. 29 (5) (279 SE2d 687) (1981).

9. It is further asserted that a new trial is mandated because the prosecutor failed to produce certain exculpatory material until after commencement of the trial. The evidence consisted of a statement by an eyewitness that he observed Shepherd with a gun about 30 minutes before the shooting. The witness testified for the State and the prosecutor elicited this statement during direct examination. There is no *Brady* violation when exculpatory "material is withheld from the defendant prior to trial and introduced by the state at trial." *Chambers v. State*, 250 Ga. 856, 860 (2) (302 SE2d 86) (1983).

10. Marshall challenges a portion of the jury instructions, alleging that the court improperly expressed an opinion concerning the evidence. We find nothing in the court's charge which could be construed as expression of an opinion as to the evidence or the guilt of the accused as prohibited under OCGA § 17-8-57. Nor is there any merit to the claim that the court failed to "balance" the charge by inadequately instructing the options of acquittal. Finally, that aspect of the re-charge relating to felony murder, while perhaps not as precise as would be desired, was not erroneous. The charge as a whole was complete and accurate and did not lead to confusion. See generally *George v. State*, 260 Ga. 809, 811 (400 SE2d 911) (1991). We find no reversible error.

*Judgment affirmed. All the Justices concur.*

---

[3] OCGA § 17-7-210 was repealed by Ga. L. 1994, p. 1895, § 1, effective January 1, 1995. It was, however, in effect at the time of Marshall's trial.

DECIDED JANUARY 29, 1996 —
RECONSIDERATION DENIED MARCH 1, 1996.

*Ronnie J. Lane,* for appellant.

*Charles M. Ferguson, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Paula K. Smith, Senior Assistant Attorneys General,* for appellee.