A97A0919. JONES v. THE STATE.

(487 SE2d 62)

MCMURRAY, Presiding Judge.

Michael Bernard Jones was convicted on two counts of armed robbery and a count of possessing a firearm during the commission of a felony. Evidence at trial showed that around 6:30 p.m. on November 29, 1994, the first victim was walking near Ralph McGill and Boulevard in Atlanta. Jones approached this victim on a bike and asked if he had change for a five-dollar bill, to which the victim replied, "no." Jones rode away but then returned, pointed a .380 pistol at the victim, and demanded money. The victim tried to talk Jones out of committing the crime but eventually gave Jones his coat, which contained $400. Approximately four hours later, Jones, again riding a bike, approached the second victim at a pay phone in the vicinity of the first incident. He asked the second victim for change of a ten-dollar bill, and upon receiving a negative response pulled a pistol on this victim and took his money, jewelry, and coat. Jones appeals. *Held*:

1. In his first enumeration of error, Jones, who is an African-American, contends the trial court erred by rejecting his challenges to the State's use of peremptory strikes against six African-American prospective jurors, which he made pursuant to *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

After the State used all six of its strikes against African-American prospective jurors, the trial court required the State to give race-neutral explanations for each of its strikes. The prosecutor gave the following reasons:

(a) Juror no. 6, an African-American male, was struck because he stated his brother had been treated unfairly by police. The prosecutor believed he might hold that fact against the police officers who testi-

fied against Jones.

(b) Juror no. 7, an African-American female, was struck because she "cut her eyes" at the prosecutor during voir dire, giving the prosecutor "bad vibes." The prosecutor felt that if the juror did not like her, she would not listen to the State's case.

(c) Juror no. 9, an African-American male, stated during voir dire that he had been the victim of a crime in another state but was not happy with the manner in which police handled the crime.

(d) Juror no. 27, an African-American male, answered voir dire questions in a "joking" manner and did not appear to take the proceedings seriously. The State also struck the juror because the venireman said he did not feel comfortable sitting in judgment of others.

(e) Juror no. 31, an African-American female, responded that she and her husband had "forgiven" those who shot her husband, and the prosecutor feared she might "forgive" Jones, as well. The prosecutor also noted that this juror did not appear mentally capable of "synthesizing" the trial evidence.

(f) Juror no. 33, an African-American male, displayed a "hostile attitude" toward the State during voir dire. Although the State did not mention in what manner the venireman was hostile, this prospective juror stated he had been unfairly arrested by police. After the State gave these responses, the trial court denied Jones' *Batson* motion.

Once a prima facie case of racial discrimination in the use of peremptory strikes is shown, the proponent of those strikes is required to produce a reason for those strikes which is race-neutral, case-related, clear and reasonably specific. *Turner v. State*, 267 Ga. 149, 151 (2) (476 SE2d 252) (1996). At this second step of the *Batson* proceeding, the proffered reasons must be accepted by the trial court so long as they are not inherently discriminatory. *Jackson v. State*, 265 Ga. 897, 899 (2) (463 SE2d 699) (1995). The reasons given need not be persuasive or even plausible, so long as they are based on something other than the race of the juror. *Woods v. State*, 224 Ga. App. 52, 54 (2) (479 SE2d 414) (1996). Once the proponent of the strikes gives race-neutral reasons for those strikes, the trial court must determine, under the totality of the circumstances, whether the challenger has proven proffered reasons were merely pretext, and the strike was actually exercised for a racially discriminatory purpose. *Turner v. State*, supra.[1]

---

[1] In *Purkett v. Elem,* 514 U. S. 765 (115 SC 1769, 131 LE2d 834, 839) (1995), the Supreme Court referred to those *civil* cases from which the *Batson* court derived its shifting-burdens test of discrimination. One of the most recent of those civil cases, *St. Mary's Honor Center v. Hicks,* 509 U. S. 502 (113 SC 2742, 125 LE2d 407, 422) (1993), clarifies that once a

Because the trial court required the State to explain its strikes, we need not determine whether Jones made out a prima facie case of discrimination. *Chunn v. State*, 210 Ga. App. 209, 210 (2) (435 SE2d 728) (1993). Here, the State gave reasons which were not, on their face, discriminatory. The record supports the State's observation that juror nos. 6, 9, and 33 gave responses indicating they had a reason to question the credibility of law enforcement. As to the remaining jurors, concern that a prospective juror is hostile to the State or that a juror will not seriously consider the State's evidence are neutral reasons for a strike. "Perceived inattention, nonresponsiveness, and hostility have been found to be legitimate, racially neutral reasons for striking a prospective juror." *Moak v. State*, 222 Ga. App. 36, 39 (3) (473 SE2d 576) (1996). See also *Lingo v. State*, 263 Ga. 664, 667 (437 SE2d 463) (1993); *Jackson v. State*, 220 Ga. App. 98, 99 (469 SE2d 264) (1996). The trial court, unlike this Court, had the opportunity to view those prospective jurors. The trial judge could determine for herself whether juror no. 7 "cut her eyes" at the prosecutor in a hostile manner, gauge the tone of voice used by juror nos. 27 and 33, and characterize the responsiveness and interest of juror no. 31. Such factors do not show up in a trial transcript. This Court will, therefore, defer to the trial court's acceptance of the State's reasons as racially neutral, case-related, clear and reasonably specific. See *McKenzie v. State*, 223 Ga. App. 108, 114 (3) (c) (476 SE2d 868) (1996).

Because the State's given reasons were sufficient to rebut Jones' prima facie showing of racial discrimination, the central issue was properly framed for the trial court's determination: whether Jones carried his burden of showing the proffered reasons were merely designed to "cover up" purposeful racial discrimination. See *Greene v. State*, 266 Ga. 439, 443 (5) (469 SE2d 129) (1996), rev'd on other grounds, 519 U. S. ___ (117 SC 578, 136 LE2d 507) (1996). Jones' counsel has pointed to facts showing the State did not strike white jurors who gave voir dire responses similar to those given by these African-American venirepersons. However, the trial court decided that issue of fact in favor of the State, and under our deferential standard of review, we cannot say the trial court's determination was clearly erroneous. See *Turner v. State*, supra at 153.

2. Jones' second enumeration asserts error in the trial court's denial of his motion to sever trial of the two armed robbery charges. At the hearing on his motion to sever, Jones argued that trying the separate offenses in one proceeding would create undue prejudice

---

race-neutral reason for a decision is given, the party claiming discrimination bears the burden of showing that the reason was false *and* that discrimination was the real reason.

against him. But "[o]ffenses may be joined [for trial] which are based on the same conduct, on a series of connected acts, or on a series of acts constituting parts of a single scheme or plan." *Floyd v. State*, 186 Ga. App. 777 (1), 778 (368 SE2d 541) (1988). Here, the State argued that these two robberies, committed four hours apart, in the same geographic area, and in an almost identical manner by an attacker identified as Jones, constituted a single "crime spree." The evidence at trial supported the State's characterization, and the trial court did not abuse its discretion by refusing to try the offenses separately. See *Samples v. State*, 217 Ga. App. 509 (1) (460 SE2d 795) (1995).

3. Jones contends the trial court erred by refusing to suppress the victims' in-court identification of him as the attacker, which he claims was tainted by an "unduly suggestive" pre-trial photographic lineup. In-court identification is not rendered inadmissible unless the pre-trial identification was impermissibly suggestive *and* the suggestiveness of the procedure created a substantial likelihood of misidentification. *Kinsey v. State*, 219 Ga. App. 204, 205-206 (1) (464 SE2d 648) (1995). Considerations in determining whether the "totality of the circumstances" shows a substantial likelihood of confusion include "(a) the opportunity of the witness to view the criminal at the time of the crime, (b) the witness' degree of attention, (c) the accuracy of the witness' prior description of the criminal, (d) the level of certainty demonstrated by the witness at the confrontation, and (e) the length of time between the crime and the confrontation." (Citations and punctuation omitted.) *Traylor v. State*, 217 Ga. App. 648 (1) (458 SE2d 682) (1995).

Here, the first victim looked straight at Jones' face under good lighting conditions for several minutes during the robbery. Five weeks later, upon viewing a photo lineup that included Jones and five other men with similar features, this victim took less than a minute to select Jones as his attacker. Although the detective did tell this victim that he could not arrest anyone without a photographic identification, the victim testified that statement had no impact on his selection. At trial in September 1996, this victim stated he was "100 percent sure" Jones was the man who robbed him. We find no substantial likelihood of misidentification. See *Kinsey v. State*, supra at 206; *Stacey v. State*, 214 Ga. App. 130, 131-132 (2) (447 SE2d 339) (1994). Although the detective should not have said that the suspect whom the victim picked from the lineup was the person the detective "had in mind," there is no indication in this case that the detective prodded the victim to make that selection or that this statement led to an inaccurate identification. See *Hulsey v. State*, 210 Ga. App. 251, 254 (2) (435 SE2d 713) (1993).

The second victim, likewise, was able to view Jones' face in sufficient lighting conditions for two or three minutes during the attack,

and this victim had no trouble picking Jones from the other photographs presented to him by the detective five weeks later. See *Kinsey v. State,* supra. Moreover, the second victim testified that his in-court identification was based not on the photographic lineup but on his own recollection of the robbery. See *Perry v. State,* 212 Ga. App. 617 (442 SE2d 484) (1994). Therefore, the trial court did not err in refusing to suppress the victims' in-court identifications.

4. In his final three enumerations of error, Jones contends the trial court erred in giving a confusing instruction to the jury, which stated: "Circumstantial evidence that excludes every reasonable hypothesis is sufficient to authorize conviction in a criminal case, although it does not remove every possibility of a defendant's innocence." Although such an instruction might cause us concern if it represented the entire charge on this issue, the trial court immediately thereafter told the jury that "[t]o warrant a conviction on circumstantial evidence, the proven facts must not only be consistent with the theory of guilt, but must exclude every other reasonable theory other than the guilt of the accused." Taken as a whole, this charge accurately instructed the jury on the proper role of circumstantial evidence. See *Hurston v. State,* 202 Ga. App. 311, 314 (2) (414 SE2d 303) (1991). Although Jones contends the court should have defined "hypothesis," he requested no such charge. The court was not required to give this definition absent such a request, especially where eyewitness testimony supported the State's case. See *Davis v. State,* 266 Ga. 801, 803-804 (7) (471 SE2d 191) (1996).

*Judgment affirmed. Beasley and Smith, JJ., concur.*

DECIDED MAY 12, 1997.

Before Judge Tusan.

*Elizabeth L. Markowitz,* for appellant.

*Lewis R. Slaton, District Attorney, Carl P. Greenberg, Jamie L. Mack, Assistant District Attorneys,* for appellee.