A97A2212. MARKEE et al. v. THE STATE.
(494 SE2d 551)

BLACKBURN, Judge.

Justin Markee and Jeremy Petree appeal their convictions for kidnapping and multiple counts of armed robbery, burglary, false imprisonment, and aggravated assault, which stemmed from incidents involving several victims over the course of three days in July 1995. The defendants contend that three separate trials of the defendants jointly were required, one for all the offenses committed on each of the three days enumerated in the indictment. Defendants appeal the trial court's denial of their motion to so separate the trials. Finding sufficient evidence to support the convictions and no reversible error, we affirm.

1. The indictment charged Markee and Petree with three "groups" of offenses. The first group of charges concerned a July 11 attack on the first victim; the second group involved a July 12 home invasion; and the third group arose from a home invasion committed on July 13 as the defendants were fleeing from the police. The trial

court denied the defendants' motion to sever these three groups of offenses.

"[O]nly when the offenses have been joined *solely* because they are of the same or similar character shall the accused have a right to severance of the offenses." (Punctuation omitted; emphasis in original.) *Evans v. State*, 201 Ga. App. 20, 25 (410 SE2d 146) (1991). "Where, however, joinder is based on the same conduct or on a series of acts connected together and evince ongoing criminality, severance lies within the sound discretion of the trial court. Offenses are not joined *solely* because they are of the same or similar character where the similarity reaches the level of a pattern evincing a common motive, plan, scheme or bent of mind." (Citations and punctuation omitted; emphasis in original.) *Whitfield v. State*, 217 Ga. App. 402, 403 (1) (457 SE2d 682) (1995).

Here, the State presented evidence showing that on the evening of July 11, the defendants approached the first victim in a theater parking lot known as a gay pick-up area and asked if he wanted to "have some fun." They traveled to a DeKalb County apartment complex, where the defendants held up the victim with a shotgun and revolver, bound him and covered his eyes with duct tape, put him in the trunk of his car, and drove around in the car for several hours. They finally dragged him into the woods and duct-taped and tied him, naked, to a tree. They stole his car, his watch, and other items. The second incident occurred the next evening, July 12, when the armed defendants invaded the victims' DeKalb County trailer, bound the victims with duct tape, hit one victim with a shotgun, and over the course of two hours ransacked the home and stole money and jewelry. On the afternoon of July 13, as the defendants were being pursued by police, they invaded another home, confined one of the victims to a laundry closet, and stole that victim's jewelry and car keys. This evidence showed what amounted to a three-day, non-stop crime spree, and the trial court did not abuse its discretion in refusing to sever the offenses comprising this ongoing criminal conduct. See id.; *Johnson v. State*, 213 Ga. App. 194, 195 (1) (444 SE2d 334) (1994).

2. In their second enumeration, Markee and Petree claim that because the "photo lineups" presented to some of the victims were unduly suggestive, those victims should not have been allowed to identify the defendants in court. "In-court identification is not rendered inadmissible unless the pre-trial identification was impermissibly suggestive *and* the suggestiveness of the procedure created a substantial likelihood of misidentification." (Emphasis in original.) *Jones v. State*, 226 Ga. App. 428, 431 (3) (487 SE2d 62) (1997). The likelihood of misidentification is determined based on the "totality of the circumstances" test, taking into consideration " '(a) the opportu-

nity of the witness to view the criminal at the time of the crime, (b) the witness' degree of attention, (c) the accuracy of the witness' prior description of the criminal, (d) the level of certainty demonstrated by the witness at the confrontation, and (e) the length of time between the crime and the confrontation.' " Id. We will review these claims despite the fact that the defendants' position at trial was not one of mistaken identity, but rather of mental distress or illness rendering the defendants incapable of forming a criminal intent.

(a) *The Victim of the July 11 Attack*. The first victim was engaged in casual conversation with both defendants for at least ten minutes before they attacked him, during which time he could see their faces. Two days after the attack, he picked each defendant from separate six-photograph lineups featuring similar individuals. Before reviewing the lineups, the victim signed an "admonition" that informed him he did not have to pick anyone, that he should not be influenced by police in making his selection, and that the persons who attacked him "may or may not" be among those photos. At trial, he testified he had "no doubt" that Petree and Markee were his assailants. The trial court did not err when it concluded these photo lineups were not unduly suggestive. See *Jones*, supra. Moreover, the mere fact that an officer told the victim that police had suspects in custody does not invalidate the photographic lineup. *Reid v. State*, 210 Ga. App. 783, 786 (2) (437 SE2d 646) (1993).

(b) *The Victims of the July 12 Attack*. The victims of this attack were a husband and wife, their nephew, and a visitor. Shown a lineup of six similar photographs two days after the incident, the wife picked Petree as her attacker and was "100 percent positive." Before showing the wife the photo lineup, police read her the same admonition given the victim of the July 11 attack. She had seen her attackers for one and a half minutes, which she testified was long enough to identify them. She identified no one from the second photo lineup. The trial court concluded the photo lineup shown to the wife was not unduly suggestive, and we find no error in that determination. *Jones*, supra. As the remaining victims of this home invasion made no in-court identification of their assailants, we need not further consider this claim.

(c) *The Elderly Victim of the July 13 Incident*. This victim was alone with the defendants for 15 minutes. Within hours of the incident, she was shown a single lineup of six photographs containing pictures of both defendants, and she positively identified both Petree and Markee. The court committed no error by allowing this testimony at trial, despite the fact that both defendants appeared in one lineup. See *Reid*, supra.

3. Petree further contends a "showup" which took place within an hour of the July 13 home invasion was unduly suggestive. As

police were pursuing Petree and Markee, the defendants disappeared in the vicinity of this home. About the same time, Petree and Markee invaded the home. One of the victims of that crime testified that she observed Petree as he threatened her, took her car keys, removed her jewelry, and locked her in a laundry room before leaving the house. Shortly thereafter, police found Petree and Markee at a nearby hotel. As police drove the victim past Petree at an intersection, she identified Petree as the man who assaulted her. The trial court did not err when it found this "showup" created no likelihood of misidentification. See *Wright v. State*, 222 Ga. App. 613, 614 (1) (475 SE2d 670) (1996); *Ferguson v. State*, 221 Ga. App. 415, 418-419 (1) (471 SE2d 528) (1996).

4. The final enumeration challenges the evidence supporting six of the convictions. Pursuant to the standards set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), we review the evidence supporting each conviction in a light most favorable to the verdict to determine whether a reasonable trier of fact could have returned a verdict of guilty beyond a reasonable doubt. *Waddell v. State*, 224 Ga. App. 172, 173 (1) (480 SE2d 224) (1996).

(a) *Count 6: Burglary on July 12*. The indictment stated that the defendants entered "the dwelling of" the victim with intent to commit a theft. Citing evidence showing the trailer was actually owned by the named victim's *wife*, Petree and Markee claim the State failed to prove its case. On the contrary, the State was not required to prove this named victim *owned* the trailer; rather, proof that he lived there was sufficient. *Phillips v. State*, 152 Ga. App. 671, 672 (1) (263 SE2d 480) (1979).

(b) *Count 9: Aggravated Assault on July 12*. Petree and Markee claim that the State failed to prove which of the two defendants struck the named victim with a shotgun. This claim is meritless, as the evidence showed both defendants were involved in this home invasion and one of them assaulted the named victim in the manner described in the indictment, making both defendants responsible as parties to the crime. See *Harper v. State*, 152 Ga. App. 689, 692 (3) (263 SE2d 547) (1979).

(c) *Counts 12 and 13: False Imprisonment on July 12*. The evidence supports the convictions for false imprisonment of the two victims of the July 12 attack who did not testify at trial. The first of these victims was a young man who lived in the trailer. Evidence from other witnesses showed he answered the door, was threatened, and was bound with duct tape until freed after the defendants left. The second victim was a visitor who arrived during the attack. One of the other victims testified that she heard this victim scream and say, "don't hurt me." This witness also testified that she saw duct tape on the other victims and that the visitor "got free first" and untaped the

others. Therefore, even though these victims did not testify, the evidence allowed the jury to determine that Petree and Markee confined them against their will. OCGA § 16-5-41; see *George v. State*, 192 Ga. App. 840, 842 (1) (386 SE2d 669) (1989).

(d) *Counts 18 and 20: Aggravated Assault and False Imprisonment on July 13.* Contrary to appellants' arguments, evidence showing that the defendants, wielding a metal cane, entered the victim's home without permission and frightened the elderly and feeble victim supports the conviction on the aggravated assault charge in Count 18 of the indictment. See *Williams v. State*, 207 Ga. App. 371, 372-373 (2) (427 SE2d 846) (1993). Likewise, evidence showed that the defendants ripped the telephone away from this victim when she tried to call for help, took away her walker so she could not get up from the sofa, and then refused to leave her home. This evidence supports the false imprisonment charge contained in Count 20. See *George*, supra.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED DECEMBER 3, 1997.

*Devon A. Orland*, for appellants.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Robert E. Statham III, Assistant District Attorneys*, for appellee.