## A99A0756. DENNIS v. THE STATE.
(518 SE2d 745)

Judge Harold R. Banke.

A jury convicted Johnny Dennis of burglary but acquitted him of murder, felony murder, and possession of a firearm during the commission of a felony. On appeal, Dennis asserts ten enumerations of error, primarily contesting an adverse ruling on his motion pursuant to *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

When viewed in a light most favorable to the verdict, the State's evidence showed that when the 86-year-old, wheelchair-bound victim, who lived alone, did not answer her telephone, her brother investigated and discovered she had been murdered in her bed. The cause of her death was a single gunshot fired inches away from the left side of her face.

Two days before her murder, the victim had filed a suspicious person report. When Corporal Tony Williams investigated, she told him that she had discovered a small, young black male, whom she had previously seen in the area, inside her garage. When she asked him what he was doing there, he inquired about her car which she informed him was not for sale. Later, when he came back and requested a glass of water, she told him he could use the outside spigot. He told her that his name was "John." When he returned a third time, the victim became upset and confided to her daughter-in-law that she was afraid.

Relying on information obtained from the victim's family, police officers and Georgia Bureau of Investigation agents began combing the neighborhood for a young black male named John. After learning

that the appellant, "Johnny" Dennis, lived down the street from the victim with his sister and her boyfriend, two investigators asked Dennis some routine questions. Dennis denied knowing the victim, keeping a gun at his house, or having done any yard work for her. But Dennis disclosed that during the previous evening, he had seen a white male with shoulder-length blonde hair running diagonally from the rear of the victim's home toward the woods carrying something like a bag. Dennis agreed to accompany investigators to the victim's home where he pointed out the path followed by the man. When a GBI agent determined that Dennis' purported observation defied the laws of physics, Dennis was taken in for further questioning.

Shortly after Dennis departed with police, his sister's boyfriend, Ronald Howell, came to the crime scene and told police he had some items at home that he was afraid might have belonged to the victim. Howell turned over a cordless phone, a manicure set, and a .22 rifle which Dennis had brought home on the night of the murder and had given to Howell. Relatives of the victim identified those items as having come from her home.

Howell provided consent to a search of Dennis' bedroom and the living room. A .32 caliber bullet was found in Dennis' bedroom. Police discovered a .32 caliber Derringer pistol and additional ammunition concealed in a cabinet in the living room. GBI test firing determined that this Derringer was the murder weapon. According to a forensic latent print examiner, two fingerprints found inside the victim's home, one from a Dustbuster on the floor of the living room and another from a portable radio located on the nightstand next to her bed, matched Dennis' fingerprints. *Held*:

1. Dennis' contention that the evidence was insufficient to support the verdict is without merit. The evidence established that on the night of the murder, Dennis suddenly came into possession of several items missing from the victim's home. An investigator depicted the disarray throughout the house as though it had been ransacked. Dennis' fingerprints appeared on the cordless phone, one of the items which his sister's boyfriend turned over to police. Dennis' fingerprints were discovered on two items located inside the victim's home. This evidence was sufficient within the meaning of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to sustain Dennis' conviction for burglary. See *Wallis v. State*, 170 Ga. App. 354 (1) (317 SE2d 331) (1984).

2. Dennis contends that the trial court violated his right to a fair trial by denying his motion to suppress several statements he made. He claims that he was in custody when initially questioned at his home and at the victim's home. He further asserts that as a mere 15-year-old boy, he did not knowingly and voluntarily waive his rights in light of the coercive atmosphere in which he was questioned.

Unless clearly erroneous, a trial court's finding of admissibility will be affirmed on appeal. *Barrs v. State*, 202 Ga. App. 520, 521 (3) (414 SE2d 733) (1992). In this case, at the hearing held pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), an officer testified that Dennis was not in police custody until he arrived at the Juvenile Intake Center. He explained that initially they considered Dennis to be a potential witness rather than a suspect. Up until their arrival at the intake center, the officer attested that Dennis had been free to leave at any time and that he would have taken Dennis home if he had been asked to do so.

During an interview at the intake center, GBI Special Agent Adrian McCravy advised Dennis of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). In the presence of two witnesses, Dennis signed a waiver form after McCravy explained the form to him point by point. After Dennis' mother arrived, Dennis was re-*Mirandized*. When questioning resumed and Dennis was confronted with the fact that incriminating evidence had been found inside his home, McCravy asked him if it was not time for him to tell the truth. In response, Dennis looked down and nodded his head affirmatively. At that point, Dennis' mother asked that the interview stop so that she could consult with an attorney, and all questioning ceased. Because there was evidence authorizing the trial court to find that Dennis was not in custody until after his arrival at the intake center and to support the court's determination that Dennis' statements were freely and voluntarily made, we cannot say the court clearly erred in its ruling. *Bryant v. State*, 193 Ga. App. 840, 841 (2) (389 SE2d 405) (1989). Further, given the overwhelming evidence that Dennis burglarized the victim's home, he cannot show the requisite harm even had the admission of the evidence been error under the analysis of *Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922) (1976). See *Cook v. State*, 270 Ga. 820, 828 (3) (514 SE2d 657) (1999).

3. Dennis asserts that the court erred by giving an incomplete charge on a defendant's right not to testify.

After instructing the jury on the presumption of innocence, the court charged, "[t]he burden is upon the state to prove the defendant's guilt beyond a reasonable doubt. That burden never shifts." The court further instructed that the defendant is not required to testify and that "no presumption of guilt may be raised and no inference of any kind may be drawn from the failure of the defendant to testify." Having reviewed the charge as a whole, we find no error. *Sweat v. State*, 226 Ga. App. 88, 90 (4) (485 SE2d 259) (1997); see *Pullins v. State*, 232 Ga. App. 267 (1) (a) (501 SE2d 612) (1998).

4. Dennis contends that the trial court engaged in improper burden shifting by ignoring the third step of the analysis under *Batson*. He claims that the trial court failed to make an express finding that

he did not carry his burden of showing that the State's proffered reasons were designed to cover up purposeful racial discrimination.

In denying the motion, the court ruled that the State gave adequately race-neutral explanations for each of its strikes. Contrary to Dennis' argument, the transcript indicates that the court did not impermissibly shift the burden and that the court afforded him a full opportunity to rebut the State's reasons. See *Jones v. State*, 226 Ga. App. 428, 430 (1) (487 SE2d 62) (1997); compare *O'Neal v. State*, 226 Ga. App. 224, 225-226 (1) (482 SE2d 478) (1997) (physical precedent only). Although Dennis vigorously contested each of the explanations offered by the State, arguing that they were all pretextual, the evidence supported the court's finding to the contrary.

5. In six enumerations of error, Dennis claims that the State violated *Batson*, supra, by using six peremptory strikes against black prospective jurors. During a *Batson* hearing, the trial court sits as the finder of fact and its findings concerning whether the opponent of a strike carried his burden of persuasion are "entitled to great deference." *Turner v. State*, 267 Ga. 149, 151 (2) (476 SE2d 252) (1996). Here, after the State offered race-neutral reasons for each strike, the trial court found that Dennis did not meet his burden of showing that the State had acted with discriminatory intent. This ruling must be affirmed unless it is clearly erroneous. Id.

(a) During voir dire, juror no. 4 stated that he had been beaten up and robbed but did not report the crimes to law enforcement authorities. The State contended that his conduct implied a distrust of police and that the juror had given up on the system. See *Sears v. State*, 268 Ga. 759, 763 (8) (493 SE2d 180) (1997) (mistrust for attorneys not invalid reason).

(b) Juror no. 5 was struck for being non-attentive and non-responsive during questioning. He avoided eye contact and was sleeping part of the time. These reasons have been found to be race-neutral reasons for striking a juror. *Moak v. State*, 222 Ga. App. 36, 39 (3) (473 SE2d 576) (1996); see *Lingo v. State*, 263 Ga. 664, 667 (1) (b) (5) (437 SE2d 463) (1993).

(c) Juror no. 10 stated that as a social worker she had been taught in her job not to judge other people. She claimed that she did not feel comfortable sitting in judgment. This reason has been held sufficiently race-neutral. *Thomas v. State*, 208 Ga. App. 367, 369 (1) (430 SE2d 768) (1993).

(d) Notwithstanding his brother's conviction for murder, Juror no. 13 testified that he thought that his brother had acted in self-defense. The State felt that this belief about his brother's conviction would affect the juror's fairness and judgment, especially since Dennis was on trial for murder. See *Lewis v. State*, 264 Ga. 101, 103 (440 SE2d 664) (1994) (explanation for strike need not rise to level of a

challenge for cause but must be race-neutral).

(e) Juror no. 16 had recently graduated from high school and been employed only a few months. She stated that her hobbies were hanging out with her friends and riding to the mall and clubs. The State expressed concern that she was too young and immature to act as a fair and impartial juror. This explanation has been found to be concrete, tangible, and race-neutral. *Whatley v. State*, 266 Ga. 568, 570 (3) (468 SE2d 751) (1996).

(f) Juror no. 29 stated that his son had been falsely charged with rape in another county. Striking a juror who is a close relative to a person in trouble with the law may be a race-neutral reason for a strike. See *Hall v. State*, 261 Ga. 778, 779 (2) (415 SE2d 158) (1991).

In none of these six instances has Dennis shown that the trial court's ruling was clearly erroneous. *Pye v. State*, 269 Ga. 779, 781 (1) (505 SE2d 4) (1998). Therefore, the court's ruling must be affirmed. Id.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED MAY 28, 1999.

*Monique D. Moyse*, for appellant.

*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Assistant District Attorney*, for appellee.