## A02A1488. DARNELL v. THE STATE.
### (571 SE2d 547)

MILLER, Judge.

Following a jury trial, Theron Darnell was convicted of armed robbery, possession of a firearm during the commission of a felony, and false imprisonment. On appeal he asserts 15 enumerations of error, all of which are without merit.

Viewed in the light most favorable to the verdict, the record reveals that a man entered a pawnshop and pulled out a gun. The man forced two employees to the back room of the shop, where he restrained one of the employee's hands with duct tape. The man then stole cash and jewelry from the shop. The entire incident was recorded by the store's video surveillance cameras.

The surveillance video was played on a local news program, and a viewer of the video identified Darnell to the police as the man who robbed the store. A detective later showed a photographic lineup to the store employee who had been restrained with duct tape, and the employee identified Darnell as the man who robbed the pawnshop.

Prior to trial, Darnell moved for several jurors to be dismissed for cause, but his motions were denied. Darnell also made a motion under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), contending that the State improperly used its peremptory challenges to strike five African-American venirepersons from the jury. After the court found that Darnell had made a prima facie showing of discrimination, the State gave race-neutral explanations for its peremptory challenges. Specifically, four of the jurors had indicated that they, or someone close to them, had been falsely accused of a crime, and one of the jurors had testified for the defense in a previous armed robbery trial. Darnell then attempted to show that the reasons for dismissing the jurors were pretextual by pointing out that the State did not strike a white juror after she stated that she had misidentified someone in the past. The court denied the *Batson* challenge.

Prior to trial, Darnell also stipulated that he would allow a police officer to testify at trial that an unnamed person identified Darnell on the surveillance video after the video was played on the local news.

At trial one of the victims identified Darnell as the robber. In addition, the court allowed the State to present the photographic lineups that were used to identify Darnell as the robber. Although the State did not formally tender the lineups into evidence, the defense raised no objection to their admission. The court also allowed the lineups to go back with the jury during deliberations, again with no objection from defense counsel.

The court instructed the jury that, in evaluating the reliability of

an eyewitness identification, they could consider, as one of several factors, the witness's level of certainty in the identification. The jury found Darnell guilty of armed robbery, possession of a firearm during the commission of a felony, and false imprisonment, and Darnell now appeals.

1. Darnell contends in his first three enumerations of error that the evidence at trial was insufficient to sustain his convictions for armed robbery, possession of a firearm during the commission of a felony, and false imprisonment. We disagree.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Here, Darnell was identified to police by a person who saw the video as well as one of the victims, who identified Darnell at trial and also in a photographic lineup. The victim testified that Darnell was the man who robbed the pawnshop while carrying a gun, held him at gunpoint, and bound his hands with duct tape in the back room of the store. Ample evidence sustained the convictions. See OCGA §§ 16-5-41 (a); 16-8-41 (a); 16-11-106 (b).

2. Darnell argues in his fourth enumeration that the trial court erred in allowing a police officer to testify to hearsay that an unnamed declarant contacted the officer and identified Darnell as the robber after seeing the surveillance video. However, the record reveals that Darnell's trial counsel agreed that the officer would be allowed to testify on this very point. Thus, any alleged error from the admission of this testimony was of Darnell's own making, and he will not be heard to complain of the results here. See *Hathaway v. State*, 241 Ga. App. 790 (1) (527 SE2d 894) (2000) ("One cannot complain of a judgment, order, or ruling that his own procedure or conduct procured or aided in causing.") (punctuation and footnote omitted); see also *Reynolds v. State*, 147 Ga. App. 488, 491 (4) (249 SE2d 305) (1978) (defendant induced error where he stipulated to admission of polygraph test results and later attempted to complain about admission of the evidence).

3. In three enumerations, Darnell argues that the trial court erred in failing to excuse three prospective jurors for cause. The court asked the statutory questions of OCGA § 15-12-164 (a), and none of the jurors responded that he or she had any bias or partiality. The record also reveals that in every instance where a juror expressed discomfort with sitting on the jury based on their personal exper-

iences, each of the jurors agreed (after being questioned by the court) that he or she would do his or her best to be fair and impartial. We find no merit to Darnell's argument that the trial court abused its discretion by failing to remove these prospective jurors for cause. See *Holmes v. State*, 269 Ga. 124, 125-126 (2) (498 SE2d 732) (1998).

4. Darnell asserts in his tenth enumeration that the State improperly used its peremptory strikes to remove five African-American venirepersons from the jury. We disagree.

> The United States Supreme Court in *Purkett v. Elem*[, 514 U. S. 765, 767-769 (115 SC 1769, 131 LE2d 834) (1995),] established a three-step test for evaluating challenges to peremptory strikes on *Batson* grounds. First, the opponent of a peremptory challenge must make a prima facie showing of racial discrimination. Second, the burden of production then shifts to the proponent of the strike to give a race-neutral reason for the strike. Third, after hearing from the opponent of the strike and considering the totality of the circumstances, the trial court then decides whether the opponent of the strike carried his burden of proving discriminatory intent in fact motivated the strike.

(Footnotes omitted.) *Freeman v. State*, 253 Ga. App. 401, 402 (1) (559 SE2d 146) (2002).

Here, the issue of whether Darnell established a prima facie case of discrimination is moot because the State offered purportedly race-neutral explanations for striking each of the potential jurors, and the trial court ruled on the ultimate question of intentional discrimination. *Jackson v. State*, 220 Ga. App. 98 (469 SE2d 264) (1996). We find that the State's race-neutral explanations were sufficient. See *Jones v. State*, 226 Ga. App. 428, 429 (1) (487 SE2d 62) (1997) ("At [the] second step of the *Batson* proceeding, the proffered reasons must be accepted by the trial court so long as they are not inherently discriminatory. The reasons given need not be persuasive or even plausible, so long as they are based on something other than the race of the juror.") (citations omitted); cf. *Dennis v. State*, 238 Ga. App. 343, 346-347 (5) (d), (f) (518 SE2d 745) (1999) (reasons for dismissing a juror who had a son who was falsely accused of a crime and another who believed convicted relative acted in self-defense were race-neutral). We now, therefore, address the issue of whether Darnell carried his burden of proving that discriminatory intent motivated the strikes.

We hold that the trial court did not clearly err in concluding that Darnell did not carry his burden of showing that the State's race-neutral reasons for dismissing the jurors were pretextual. Darnell's attempt to show that the white juror who had misidentified a person

in the past was somehow similarly situated to the African-American jurors who had themselves been misidentified, or knew someone close to them who had been misidentified, is without merit. Being personally misidentified or falsely accused of a crime is not the same thing as being a person who has simply misidentified someone else. See *Freeman v. State*, 268 Ga. 181, 183 (1) (486 SE2d 161) (1997) (denial of *Batson* challenge upheld where "the other jurors to whom [defendant] compare[d] the stricken African-American venireperson were not so similarly situated as to diminish the force of the explanations given for the strike") (citation omitted).

5. Darnell contends in his eleventh enumeration that the trial court erred in instructing the jury that, in evaluating the reliability of an eyewitness identification, the jury could consider, as one of several factors, the witness's level of certainty in the identification. This Court, however, has already rejected Darnell's argument in *Armstead v. State*, 255 Ga. App. 385, 386-389 (2) (565 SE2d 579) (2002).

6. In his twelfth and thirteenth enumerations, Darnell argues that the trial court erred in (a) failing to exclude at trial the victim's pre-trial identification of Darnell in the photographic lineup, because the photographic lineup was marked as an exhibit but never formally tendered into evidence, and (b) submitting these documents that were not formally tendered into evidence to the jury during deliberations. However, Darnell raised no objection at trial and has therefore presented nothing for this Court to review. See, e.g., *Kelly v. State*, 204 Ga. App. 789 (1) (420 SE2d 651) (1992) ("If counsel desires to preserve an objection upon a specific point for appeal, the objection must be made at trial upon that specific ground.") (citations and punctuation omitted).

7. In his remaining enumerations, Darnell contends that his counsel was ineffective for (a) agreeing to allow the police officer to testify regarding the witness who identified Darnell on the surveillance tape after the tape was played on the local news, (b) failing to call an expert witness on the problems inherent to eyewitness identification, (c) allowing the photographic lineups to go out with the jury during deliberations, and (d) failing to make a continuing witness objection to the photographic lineups going out with the jury during deliberations. We disagree.

To prove ineffective assistance, Darnell was required to show that counsel's performance was deficient and that this deficient performance prejudiced his defense. *Ellison v. State*, 242 Ga. App. 636, 638 (7) (530 SE2d 524) (2000), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The trial court's determination with respect to counsel's effectiveness will be upheld on appeal unless clearly erroneous. *Jackson v. State*, 209 Ga. App. 53, 56 (7) (432 SE2d 649) (1993). Evidence supported the trial court's find-

ing that Darnell did not meet his burden of showing deficient performance or prejudice based on his counsel's actions.

(a) Darnell's counsel testified at the motion for new trial hearing that he was concerned about the State calling Darnell's stepfather as the actual witness who identified Darnell from the surveillance videotape if counsel did not agree to allow the police officer to testify instead that an unnamed person had identified Darnell from the videotape. As counsel made a strategic decision in this regard, evidence supported the trial court's finding that Darnell failed to meet his burden of showing ineffective assistance. See *Adkinson v. State*, 245 Ga. App. 178, 179-180 (1)-(3) (537 SE2d 474) (2000).

(b) Darnell cites to *Johnson v. State*, 272 Ga. 254 (526 SE2d 549) (2000), for the proposition that his trial counsel should have called an expert witness to challenge the reliability of the eyewitness identification of Darnell. However, *Johnson* does not stand for the proposition that defense counsel is *required* to call an expert witness at trial where one of the primary issues involved is eyewitness identification of the defendant, let alone the proposition that the failure to call such an expert witness amounts to ineffective assistance. We find no merit to Darnell's contention and hold that the trial court did not clearly err in concluding that Darnell did not carry his burden of showing ineffective assistance here.

(c) Darnell's arguments that trial counsel was ineffective for allowing the jury to view photographic lineups that were not admitted into evidence and failing to raise a continuing witness objection to the unadmitted lineups are without merit. Even though Darnell's trial counsel did not object to the photographic lineups, the photographic lineup evidence would have been merely cumulative of the victim's eyewitness identification of Darnell at trial and the further identification of him on the surveillance videotape. We hold that the trial court did not clearly err in concluding that Darnell failed to carry his burden of showing that counsel's performance prejudiced his defense. Cf. *Smart v. State*, 253 Ga. App. 649, 656 (10) (c) (560 SE2d 92) (2002).

*Judgment affirmed. Blackburn, C. J., and Johnson, P. J., concur.*

DECIDED SEPTEMBER 23, 2002.

*Franklin & Hubbard, Cynthia G. Morris*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Anne E. Green, Assistant District Attorneys*, for appellee.