A89A0873. GEORGE v. THE STATE.
(386 SE2d 669)

BEASLEY, Judge.

Defendant appeals his convictions of kidnapping with bodily injury of Ralph Riner (OCGA § 16-5-40 (b)), kidnapping of Nelda Riner (OCGA § 16-5-40 (a)), and aggravated assault on Ralph Riner (OCGA § 16-5-21) (a) (2)). He was acquitted of the charge of aggravated assault on Mrs. Riner and the court directed a verdict on the charge of possession of less than an ounce of marijuana (OCGA § 16-13-30 (j) (1)).

Mr. Riner manufactured and sold stadium cushions, and he and Mrs. Riner were delivering a load when their automobile developed trouble on I-20 near Douglasville. Mr. Riner was familiar with th

road, having traveled it repeatedly. It was near midnight and they began walking toward the next exit, Lee Road. When George pulled over and asked if he could help them, Mr. Riner told him they needed a ride to the next exit where a Starvin' Marvin truck stop was located. George exited there but proceeded to drive on by the Starvin' Marvin, despite Mr. Riner's statement then that "This is where we wanted to go." George continued to drive on without telling them anything specific about his intent or destination and passed a second convenience store that was closed. He continued to go further away from I-20 toward a rock quarry, driving erratically. He hit Mr. Riner in the face with a Pepsi bottle from which he had been drinking. Mr. Riner, startled by the blow, saw George raise the bottle in his direction again and struggled with him. The struggle caused the car to spin and stop. Mr. Riner had George pinned and yelled for his wife to get out of the back seat. George asked Mr. Riner to get out of his car, which Mr. Riner was doing. George sped away, followed by another motorist who got the license number. Mr. Riner suffered a gash on the bridge of his nose and cuts inside his nose and mouth, all of which bled copiously.

George admitted most of these facts, acknowledging that he bashed Mr. Riner in the face with the bottle. The only reason he gave was that he was drunk and crazy, having consumed 12 to 14 beers and smoked four or five marijuana joints with acquaintances that evening. He said he was a lifelong resident of the area and had intended to take the Riners to an unnamed garage on Lee Road, but merely took a wrong turn. He said the Riners did not request any specific destination. He did not stop at the Starvin' Marvin because all they could have gotten there was gas and they needed a tow truck, although he did not explain this to them at the time.

1. Defendant contends the evidence was insufficient to support the kidnapping convictions and the trial court erred in not directing a verdict of acquittal or new trial as to these charges.

Kidnapping, OCGA § 16-5-40, is the abduction or stealing away of a person without lawful authority or warrant and the holding of such person against his will. Defendant argues that kidnapping was not proven here because the Riners got in defendant's car of their own volition and they never specifically asked or directed him to let them out of the car.

The victims' getting into the car voluntarily will not protect a kidnapper who at that moment or later decides not to allow them to leave. *Awtrey v. State*, 175 Ga. App. 148, 150 (2) (332 SE2d 896) (1985); *Helton v. State*, 166 Ga. App. 662, 663 (1) (305 SE2d 592) (1983); *Rubiano v. State*, 147 Ga. App. 142, 143 (1) (248 SE2d 207) (1978).

Defendant's argument that he cannot be convicted of kidnapping unless the victim verbalizes a specific request to be let go is legally

indefensible. The inquiry is whether, from the evidence presented, the jury can determine beyond a reasonable doubt that the victims were being held against their will. While a firm demand by the victim to be let out of the vehicle may assist the jury in this inquiry, *Awtrey,* supra; *Helton,* supra, that does not negate the fact that the jury may also find a detention against the will of the victim based solely on circumstantial evidence. OCGA §§ 24-1-1 (4); 24-4-5; 24-4-6; see *Rubiano,* supra.

Defendant argues that the Riners never demanded to leave the car. Viewing the evidence in favor of the verdict, *Thomas v. State,* 173 Ga. App. 810, 812 (2) (328 SE2d 422) (1985), the Riners specifically told defendant where they wanted to be taken and pointed it out when they passed the Starvin' Marvin. Assuming without deciding that verbal notice of the withdrawal of the consent to travel with defendant was required, there was sufficient evidence of it provided here. Further, it is abundantly clear that the Riners were being held against their will when George smashed Mr. Riner in the face with his Pepsi bottle. The evidence was sufficient. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see *McGinnis v. State,* 183 Ga. App. 17, 18 (1) (358 SE2d 269) (1987).

2. Defendant complains of the joinder for trial of the accusation concerning marijuana possession and the remaining charges. Two facts mitigate against this position. First, defendant in testimony freely admitted his use of marijuana. Second, the court directed a verdict for defendant on the possession count and directed the jury not to consider it. No harm has been shown and there is thus no basis for reversal. *Stewart v. State,* 180 Ga. App. 266, 267 (2) (349 SE2d 18) (1986).

3. Defendant argues that the convictions of aggravated assault, Count 3, and kidnapping with bodily injury, Count 1, both relating to Mr. Riner, legally merged and the aggravated assault conviction must be reversed, which the State concedes. The conviction of Count 3 is reversed. *Brown v. State,* 247 Ga. 298, 302 (9) (275 SE2d 52) (1981) (rev'd on other grounds, *Wilson v. Zant,* 249 Ga. 373, 380 (2) (290 SE2d 442) (1982)).

4. Defendant claims error in the denial of his motion for mistrial based on his being brought into a hallway adjacent to the jury room the second morning of trial, in shackles. The only mention of this in the record is the statement of defendant's counsel that he observed defendant coming into the holding cell area wearing leg irons and handcuffs, that this occurred in the hallway immediately adjacent to the jury room, and the door was open so jurors "could and did see the Defendant." Aside from whether such a statement not made under oath is evidence of anything, see OCGA § 24-9-25, it was answered by the prosecutor's like statement that a bailiff closed the door to the

jury room and that the prosecutor saw defendant removed to a far end of the hall to start removing the shackles.

Also, the burden was on the defendant to show that the jurors did see him bound in order to properly present the question of a mistrial, not merely that his attorney was of the opinion that they did. See *Parker v. State*, 255 Ga. 167, 169 (2) (336 SE2d 242) (1985). Defendant did not seek to have any of the jurors called as witnesses and pursued the matter no further.

Even if it had been shown that jurors did see defendant, that would not automatically have entitled him to a mistrial; that is a matter left to the court's discretion. *Curtis v. State*, 182 Ga. App. 899, 900 (3) (357 SE2d 602) (1987). We find no abuse of that discretion here. *Middlebrooks v. State*, 184 Ga. App. 791, 792 (3) (363 SE2d 39) (1987).

*Judgment affirmed in part and reversed in part. Carley, C. J., and McMurray, P. J., concur.*

DECIDED SEPTEMBER 5, 1989 —
REHEARING DENIED SEPTEMBER 19, 1989 —

*Lane & Sanders, Thomas C. Sanders*, for appellant.
*Frank C. Winn, District Attorney, J. David McDade, Assistant District Attorney*, for appellee.

