S04A1664. PRUITT v. THE STATE.
(611 SE2d 47)

HINES, Justice.

Leslie Sean Pruitt appeals from his convictions for malice murder and kidnapping in connection with the death of Terence Flood.[1] For the reasons that follow, we affirm.

___

[1] Flood was killed on August 21, 1997. On November 21, 1997, a Douglas County grand jury indicted Pruitt and Raphael Tony Crook for malice murder, felony murder during the commission of kidnapping, and kidnapping. Pruitt was tried before a jury June 14-18, 1999, and found guilty of all charges. On June 23, 1999, he was sentenced to life in prison for malice murder and a consecutive term of ten years in prison for kidnapping; the felony murder charge was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372-374 (4), (5) (434 SE2d 479) (1993). He moved for a new trial on July 15, 1999; the motion was denied on December 20, 2002. On January 10, 2003, Pruitt, acting pro se, filed a notice of appeal, and on May 19, 2003, this Court dismissed his appeal and remanded the case to the trial court for it to give him instructions consistent with *Cochran v. State*, 253 Ga. 10 (315 SE2d 653) (1984). After receiving an extension of time, Pruitt, through counsel, filed an amended motion for new trial on September 25, 2003. It was denied on February 25, 2004. Pruitt filed a notice of appeal on March 25, 2004. The case was docketed in this Court on July 6, 2004, and submitted for decision on December 2, 2004.

Construed to support the verdicts, the evidence showed that Pruitt and co-indictee Crook traveled from Alabama to Atlanta to buy 12 ounces of cocaine from Flood, intending to resell it. They bought the cocaine and returned to Alabama. Later that day, Pruitt discovered that the cocaine was highly adulterated and unsuitable for his intended use. The next day, Pruitt and Crook returned to Atlanta and met Flood at his apartment. Flood contacted his suppliers and reported that all the cocaine they had was similarly adulterated. Pruitt, Crook, and Flood went to a shopping mall in Pruitt's car and, after a telephone call, Flood said it would probably take a day or so before he could replace the cocaine, and that he could learn exactly when after he returned to his apartment. The three returned to Pruitt's car, and Pruitt drove around the city for a time. He did not drive back to Flood's apartment, but drove onto Interstate 20 and proceeded toward Alabama. After passing the intersection of Interstates 20 and 285, Flood asked where they were going. Pruitt told Flood that Crook had to return to Alabama, and that he would take Crook home first and then bring Flood back to Atlanta. Flood said that he did not wish to go to Alabama and requested that Pruitt drive him home first. Pruitt assured him that he would take him home after taking Crook home, but Flood repeated that he did not want to go to Alabama and that Pruitt should take him home or let him out. The discussion took some time; at least five separate times, Flood said that he did not want to go to Alabama.

Near the exit for Chapel Hill Road in Douglas County, Flood grabbed the steering wheel and the car veered off the road. Pruitt and Flood both exited the vehicle. Pruitt shot Flood twice in the back, fatally. Pruitt returned to the car and drove away. Witnesses were able to record the license plate number of the car.

Pruitt recruited his girlfriend and his cousin to help dispose of the car, which he attempted to burn. He told his cousin that he shot Flood; he also said the same thing to his girlfriend, and to an investigating police officer.

1. The evidence was sufficient to enable a rational trier of fact to find Pruitt guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. On several occasions prior to trial, particularly during a proceeding regarding Pruitt's competency to stand trial, Pruitt expressed dissatisfaction with his appointed counsel and stated that he wanted her to withdraw. After he was adjudged competent, counsel moved on his behalf that she be permitted to withdraw so Pruitt could go forward and represent himself. The court conducted a hearing to determine whether Pruitt was knowingly and intelligently waiving his right to counsel. See *Faretta v. California*, 422 U. S. 806 (95 SC

2525, 45 LE2d 562) (1975). The court denied the motion to withdraw, finding that Pruitt did not wish to act as his own attorney, but merely wanted different counsel be appointed to represent him. Pruitt asserts that the court's ruling denied him the right to represent himself. See *Faretta*, supra; Ga. Const. of 1983, Art. I, Sec. I, Par. XII.

During the hearing to determine the propriety of his purported waiver of the right to counsel, in response to the question of whether he "truly want[ed]" to serve as his own attorney, Pruitt responded: "I really don't, but I'm just . . . I don't know. I told you . . . Like I said once before, I'm just fed up with all this . . . I don't know." Other attempts to get a definitive answer to whether Pruitt wished to represent himself, or whether he simply wished different counsel be appointed to represent him, or whether he wished the assistance of current counsel while he acted as his own attorney, elicited similar equivocal responses. Pruitt specifically told the court that he would like to be represented by "the right lawyer," and that he and appointed counsel "can't get along." At one point, the court asked if Pruitt wanted to represent himself because he was the "only one that can," to which he responded: "I just . . . I don't know. I just don't . . . I just don't want . . . I just want to be . . . I just want her to stay away from me. That's all I want. I just want her to stay away from me. She's giving me a headache, driving me. . . ." The court then posited: "So its really aimed at her and not the fact that you don't want a lawyer. You just don't want her." Pruitt responded: "That's it."[2]

During the course of the hearing, it became clear that Pruitt's request to represent himself was not unequivocal. See *Thaxton v. State*, 260 Ga. 141, 142 (2) (390 SE2d 841) (1990). Accordingly, it was not error to deny the motion. Id. See also *Colwell v. State*, 273 Ga. 634, 638 (3) (b) (544 SE2d 120) (2001).

3. Pruitt contends that, prior to the selection of the jury array, an unknown number of potential jurors were excused from service without his participation, and that this was error. But, it is undisputed that the trial court did not rule on excusing any such potential jurors. Rather, any action in that regard was taken by a different judge presiding over a separate proceeding that related to the ability of potential jurors to serve. See OCGA § 15-12-1. To the extent that Pruitt challenges the composition of the jury array in his case, he merely pointed out to the trial court that only one African-American was in the jury array, and this did not meet his burden to show purposeful discrimination. See *Jewell v. State*, 261 Ga. 861, 863 (3) (413 SE2d 201) (1992).

---

[2] During the competency hearing, Pruitt also said that he wanted a lawyer who would "fight" for him and was more "[his] kind of lawyer," "like that man who was in here yesterday."

4. Pruitt asserts that the State failed to prove that venue for the kidnapping charge was proper in Douglas County, arguing that the kidnapping was consummated in Fulton County, in the vicinity of the intersection of Interstates 20 and 285, when Flood began to question where Pruitt was driving.[3] However, venue may be proved by circumstantial evidence and it was a question for the jury. See *Lynn v. State*, 275 Ga. 288, 289 (3) (565 SE2d 800) (2002); *Turner v. State*, 273 Ga. 340, 343-344 (3) (541 SE2d 641) (2001). The jury was instructed as to kidnapping and venue, and specifically as to OCGA § 17-2-2 (e) and (h), which provide "mechanism[s] by which [the Constitutional venue] mandate can be carried out when the place in which the crime is committed cannot be determined with certainty." *Bundren v. State*, 247 Ga. 180, 181 (1) (274 SE2d 455) (1981).

The fact that Flood got into the car with Pruitt and Crook voluntarily does not mean that kidnapping did not later occur. See *George v. State*, 192 Ga. App. 840, 841 (1) (386 SE2d 669) (1989). Rather, the question is at what point could the jury determine, beyond a reasonable doubt from the evidence, that Flood was being held against his will. Id. There was evidence from which the jury could conclude that Flood's presence in the car remained voluntary until it became clear that Pruitt was not mistakenly driving toward Alabama and that Pruitt would not accommodate Flood's wish that he not be taken there, and hence the jury could determine that the crime of kidnapping was complete when Pruitt refused to turn his car around or to stop and let Flood exit. See *Helton v. State*, 166 Ga. App. 662, 663 (1) (305 SE2d 592) (1983). By applying the mechanisms set forth in OCGA § 17-2-2 (e) and (h), the jury could also conclude that venue was proper in Douglas County.[4] There was no error in allowing the jury to decide the question of venue.

5. Finally, Pruitt contends that he did not receive effective assistance of counsel. In order to prevail on this claim, he must show both that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of this test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the

---

[3] There is no dispute that the site where the car left the road is in Douglas County and that the intersection of Interstates 20 and 285 is in Fulton County.

[4] In fact, Pruitt's own testimony was that Flood did not begin to protest the direction of the car until it was a mile or two from where it went off the road, in Douglas County.

exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong, Pruitt must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783.

Specifically, Pruitt argues that counsel was deficient in not seeking to suppress a warrant extraditing him from Alabama because it was not accompanied by an affidavit. But, Pruitt did not question trial counsel at the hearing on the motion for new trial, or produce any other evidence, and has not overcome the presumption that counsel's conduct was reasonable. See *Morgan v. State*, 275 Ga. 222, 227 (564 SE2d 192) (2002).[5] Nor has he attempted to demonstrate that the outcome of his trial would have been any different if counsel had pursued the course of action he now says should have been followed.

*Judgments affirmed. All the Justices concur.*

DECIDED MARCH 28, 2005.

*Lucinda Perry*, for appellant.

*J. David McDade, District Attorney, Christopher R. Johnson, Assistant District Attorney, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General*, for appellee.

---

[5] During a pre-trial hearing, counsel stated to the court that she had looked at the extradition documents and spoken to the Alabama attorney who assisted Pruitt there, but saw no error.