## A07A1367. SMITH v. THE STATE.
(651 SE2d 133)

MIKELL, Judge.

After a jury trial, Kennedy Smith was convicted of burglary, kidnapping, rape, and two counts of robbery. Smith was sentenced to serve a total of 90 years, 20 years each on the burglary, kidnapping, and rape counts, and 15 years each on the robbery counts. On appeal, Smith challenges the sufficiency of the evidence as to each conviction and the trial court's denial of his motion for a directed verdict of acquittal. We affirm.

> The standard for reviewing the denial of a motion for a directed verdict of acquittal is the same as that used for reviewing the sufficiency of the evidence supporting a criminal conviction. On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court. As long as there is

---

[6] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[7] *Metts v. State*, 270 Ga. 481, 483 (2) (511 SE2d 508) (1999).

some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[1]

So viewed, the evidence shows that on September 19, 2004, the victim in the instant case lived with a roommate in a house in Lowndes County. The victim testified that she was home alone when at approximately 11:00 p.m., she went outside to her car to find a lighter and noticed a car parked across the street with its trunk open; that 30 or 40 minutes later, she heard a knock at the door and looked through the glass panes at the top of the door but did not see anyone; that she still opened the door because she assumed it was her roommate or some friends; and that she looked to the right and saw nothing but when she looked to the left, "a big black man came at [her] with a beer bottle over his head." The man was later identified as Smith. The victim further testified that she immediately dropped to the floor, putting her hands up, and told Smith not to hurt her and to take whatever he wanted; that Smith repeatedly told her to be quiet; and that he then told her to get up because they were going for a ride. The victim asked if she could take her purse and when Smith said she could, she put her cellular phone in her bag so that she could call for help. The victim maintained that she did not want to go with Smith but was afraid that he would beat her to death.

The victim testified that she and Smith walked across her yard and the street to his car, a four-door burgundy Pontiac; that they drove around for approximately twenty to thirty minutes until Smith parked the car near Griffin Industries; that Smith told her to keep still, got out of the car, then stood at the trunk for a minute; and that Smith returned to the car and told her to get out because they were going for a walk. Smith put his arm around the victim's shoulders as they walked. The victim told Smith that she was about to be sick and sat on the pavement, and Smith sat down across from her and started going through her purse. Smith found her wallet and asked if he could get money off of her credit cards. The victim told him that she had about $1,700 in her account and that she would give it all to him if he would drop her off on the side of the road or take her home. Smith replied that he was going to take all of the money but that she was not going home.

Smith told her to get up and once they arrived back at his car, opened the back door for the victim, told her to get in, sat beside her, and demanded that she take off her clothes. When the victim appeared reluctant, Smith told her that if she wanted to live, she would

[1] (Footnotes omitted.) *Jones v. State*, 285 Ga. App. 121-122 (1) (645 SE2d 608) (2007).

do as he had asked, and she complied. The victim testified that Smith raped her and did not wear a condom while doing so and that Smith then returned to the driver's seat, and she to the passenger's seat, after putting on her clothes.

The victim testified that when they left Griffin Industries, she told Smith that the banks and the money were toward the left because she knew that the interstate was to the right and feared that she would never see her family again if they left the area. The victim testified that she engaged in small talk with Smith while she directed him to an automated teller machine (ATM) and even sang songs with him because she was trying to keep herself calm. When they arrived at the first ATM, the victim noticed that no other cars were in the parking lot. She withdrew $500, the maximum amount that the machine would disperse, which the machine dispensed in $20 bills, and gave it to Smith. She told him that there were other machines from which they could withdraw more money. At the next machine, Smith escorted the victim to the machine, but she was only able to withdraw $100 twice, again in $20 denominations, because she had exceeded her daily withdrawal amount. Smith told her that was fine.

Once they left the ATM, the victim told Smith that she wanted something to drink and suggested that they go through the drive-thru window at Taco Bell. The victim testified that by that time, it was approximately 1:00 a.m., and she suspected that there would be people at Taco Bell. While they were in the drive-thru line, the victim opened the door and was able to escape despite Smith trying to hold her in the car. She ran up to the people in the parking lot, yelling that she had been kidnapped, and immediately used her cellular phone to call for help.

Officer Randy Jones of the Lowndes County Sheriff's Office testified that he worked security for Taco Bell that evening and saw the victim jump out of a burgundy vehicle and the car drive away toward the interstate. Jones testified that the victim was very upset, crying and shaking and that he called 911 to get her help and to have a be on the lookout (BOLO) issued for the car. Deputy Mike Lee of the Lowndes County Sheriff's Office saw Smith's vehicle shortly after he heard the BOLO and pursued Smith until Smith jumped from his moving car and ran down an embankment. After waiting for backup to arrive, Lee proceeded down the embankment and located Smith, who was lying down in the grass. Lee searched Smith incident to his arrest and found two ATM receipts in Smith's front left pocket. Several other officers who participated in the search testified at trial, one of whom explained that he recovered $700 in $20 bills from Smith's person.

Detective Jason Sunday of the Valdosta Police Department met the victim at approximately 3:00 a.m. at The Haven Rape Crisis Cen-

ter (the "Haven"). He recalled that the victim was visibly upset and shaking. Sunday requested that a sexual assault examination kit be completed on the victim and returned to him. Teresa Baize, a sexual assault nurse examiner employed at the Haven, testified that the victim was brought to the Haven by the Valdosta Police Department at 3:30 a.m. and that she conducted a sexual examination on her. Baize testified that she collected the victim's underwear to give to the police, and documented that she had injuries to her knee and to her genital area; that the victim had injuries to both her external and internal vaginal area, which were consistent with forced intercourse; and that Baize photographed the injuries and completed a sexual assault collection kit.

Gina Pineda, the assistant director and technical leader for ReliaGene Technologies, a private DNA testing company, testified that on May 26, 2005, she received the sexual assault kit performed on the victim, which included a saliva sample and several cervical-vaginal swabs and smears and concluded that there was sperm present on the swabs. Forensic biologist Charity Davis of the Georgia Bureau of Investigation testified that she tested the buccal and vaginal-cervical swabs from the victim and buccal swabs from Smith and that the DNA obtained from the vaginal-cervical swab contained DNA from two individuals, the victim and Smith. Keith Anderson of the Valdosta Police Department testified that he obtained buccal swabs from Smith's mouth and penis. Stephen Chammoun of the Valdosta Police Department testified that he obtained the victim's DNA with a buccal swab.

1. *Kidnapping.* "A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will."[2] Smith contends that the evidence did not support his conviction for kidnapping because the victim was not held against her will, as evidenced by her failure to take advantage of several opportunities to escape from Smith. We find no merit to this argument.

The victim testified that when she saw Smith standing outside of her door with the bottle raised over her head, she dropped to her knees, pleading that he not hurt her; that Smith ordered her to get up and told her that they were leaving; and that she did not want to go with him but did not think that she had the option to refuse to do so. The victim explained throughout her testimony that she did not attempt to escape prior to convincing Smith to go to Taco Bell because she feared that if she attempted to do so in an area where no one else was present, Smith would catch her and beat her to death. The victim

---

[2] OCGA § 16-5-40 (a).

was cross-examined thoroughly about the reasons that she did not attempt to escape earlier, and it was for the jury to weigh the credibility of her testimony.[3] The jury could find that the kidnapping was completed when the victim left her home with Smith.

Even if we assume, arguendo, however, that the victim entered the car willingly, once Smith refused the victim's offer of the money in her account in exchange for Smith's agreement to let her go, a jury could determine that the crime of kidnapping was completed at that point.[4] As we held in *George v. State*,[5] a kidnapping case where the defendant alleged that the victim never asked to be set free, "[t]he inquiry is whether, from the evidence presented, the jury can determine beyond a reasonable doubt that the victim[ ] [was] being held against [her] will."[6] There was a plethora of evidence presented in this case from which the jury could so conclude.

2. *Burglary.* "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another."[7] Smith argues that his entry into the victim's home was not unauthorized and that there was no evidence that he intended to commit theft while in her home. The fact that the victim opened the door even though she did not see anyone when she looked through the glass pane does not mean that she authorized Smith's entry into her home.[8] The victim testified that when she saw Smith with the bottle raised over her head, she dropped to her knees, pleading that he not hurt her. The jury could certainly conclude that her actions did not translate into consent for him to enter her home.

We also reject Smith's argument that his conviction should be reversed because there was no evidence that he committed a theft in the victim's home. The offense of burglary is completed when one enters the home of another with the intent to commit the felony offense of kidnapping.[9] As there was sufficient evidence for the jury to conclude that Smith was guilty of burglary, this enumerated error fails.

---

[3] *Lockett v. State*, 217 Ga. App. 328, 329 (1) (457 SE2d 579) (1995).

[4] See *Pruitt v. State*, 279 Ga. 140, 143 (4) (611 SE2d 47) (2005) (crime of kidnapping complete when victim who entered car willingly was not allowed to leave the car when he asked to do so).

[5] 192 Ga. App. 840 (386 SE2d 669) (1989).

[6] Id. at 842 (1).

[7] OCGA § 16-7-1 (a).

[8] See *Adcock v. State*, 269 Ga. App. 9, 11 (1) (603 SE2d 340) (2004) (court rejected defendant's argument that he did not enter premises without authority where victim opened the door but did not invite defendant to enter; nonetheless, defendant entered, brandishing a weapon).

[9] See *Childs v. State*, 257 Ga. 243, 252 (12) (357 SE2d 48) (1987).

3. *Rape.* "A person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will."[10] Smith argues that his conviction for rape must be reversed because the state did not prove the elements of lack of consent and force. We disagree.

"Consent induced by fear is not the free consent required to prevent [an] act from constituting rape."[11] The victim testified that when she voiced her reluctance after Smith told her to take her clothes off, he told her that she would do this if she wanted to live. The threat against the victim's life certainly helps to establish her lack of consent.[12] The threat also constitutes evidence that the rape was forcibly committed.[13] Additionally, there was medical evidence that the injuries sustained by the victim were consistent with forced intercourse. Accordingly, any rational trier of fact could have concluded based on the evidence that the victim was raped.

4. *Robbery.* The indictment charged Smith with two counts of robbery by intimidation in connection with Smith's taking money from the victim. Pursuant to OCGA § 16-8-40 (a) (2), a person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another by intimidation, the use of threat or coercion, or by placing that person in fear of immediate serious bodily injury to himself or to another. Robbery by intimidation may be accomplished without a weapon or an overt act of physical force, and implicit in the offense is the threat of violence.[14]

> Intimidation is that terror likely to create an apprehension of danger, and induce a person to part with his property for the safety of his person. . . . A threat by a perpetrator to inflict harm constitutes the requisite force or intimidation if that threat of harm induces the victim/possessor of property to relinquish possession.[15]

Smith's argument on appeal is that there was no taking because the victim volunteered the money. However, this argument disregards the sequence of events that occurred before the actual robbery.

---

[10] OCGA § 16-6-1 (a) (1).

[11] (Citation and punctuation omitted.) *Collins v. State*, 267 Ga. App. 784, 790 (6) (600 SE2d 802) (2004).

[12] See generally *Rowe v. State*, 263 Ga. App. 367, 369 (3) (587 SE2d 781) (2003).

[13] See *McDougal v. State*, 239 Ga. App. 808, 810 (3) (521 SE2d 458) (1999).

[14] *Richards v. State*, 276 Ga. App. 384, 385 (623 SE2d 222) (2005).

[15] (Citation and punctuation omitted.) *Hewitt v. State*, 277 Ga. 327, 329-330 (1) (b) (588 SE2d 722) (2003).

By that point, Smith had raped the victim and told her that he would take her money but that she would not be going home. The record shows that the victim reminded Smith of the money on her credit cards to keep him from driving toward the interstate because she suspected that she would never see her family again if they left the area, particularly in light of his threat. Accordingly, the evidence was certainly more than sufficient to support any rational trier of fact's conclusion that the victim was giving Smith the money out of fear for her life, and therefore that Smith was guilty of robbery beyond a reasonable doubt.[16]

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED AUGUST 10, 2007.

*Copeland & Walker, Roy W. Copeland*, for appellant.
*J. David Miller, District Attorney, Tracy K. Chapman, Assistant District Attorney*, for appellee.

---

[16] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).