S12A1548. THOMAS v. THE STATE.
(738 SE2d 571)

NAHMIAS, Justice.

On June 16, 2009, a Carroll County grand jury indicted Appellant Lance Thomas, Jr., along with Robert Robinson, James Prothro, and Tony Smith, for the following crimes in connection with a deadly home invasion that occurred on December 24, 2008: (1) malice murder of David Nixon, (2) felony murder of David Nixon (based on aggravated assault with a deadly weapon), (3) malice murder of Michael Cruver, (4) felony murder of Cruver (based on aggravated assault with a deadly weapon), (5) aggravated assault of Reginald Nixon ("Nixon") with a deadly weapon, (6) burglary, (7) aggravated assault of Cruver with intent to rob, and (8) aggravated assault of Nixon with intent to rob. Robinson pled guilty to the two counts of felony murder; Prothro pled guilty to burglary and aggravated assault; and Smith pled guilty to conspiracy to commit robbery. They all testified for the State at Appellant's trial, where Appellant was found not guilty of the malice murder counts but guilty of all the other charges. On appeal, he contends that the evidence at trial was insufficient to sustain his burglary conviction, that the trial court erred in denying his motions to suppress evidence seized pursuant to a vehicle search and his custodial statement to the police, and that the trial court should have merged several convictions for sentencing.[1] We affirm.

1. Viewed in the light most favorable to the verdict, the evidence showed the following. The week before Christmas 2008, Appellant, Robinson, Smith, and Jarrell Washington drove a white rental car from Ohio to South Carolina to visit Robinson's father. After the visit, the men drove to Atlanta to visit Cherelle Williams, who is Smith's cousin. They met Prothro at Williams's apartment, and the men discussed committing a robbery. Prothro suggested that they rob

---

[1] The jury returned its verdict on October 26, 2010. That same day, the trial court sentenced Appellant to life in prison on both of the felony murder convictions and 20 years in prison on the remaining convictions, with all sentences to run consecutively. Appellant's trial counsel filed a timely motion for new trial, which new appellate counsel amended on February 17, 2012. On April 19, 2012, the trial court denied the motion. Appellant filed a timely notice of appeal, and the case was docketed to the September 2012 term of this Court and submitted for decision on the briefs.

Reginald Nixon's house. In the early morning hours of December 24, the men, except for Washington, drove to Nixon's house. Appellant and Robinson, who were wearing black shirts and were armed with a .357-caliber revolver and 9mm pistol, respectively, walked up to the house, and Robinson knocked on the door.

Nixon was awake in the front room of the home with his friend, Michael Cruver; his father, David Nixon, was asleep in a bedroom. After hearing the knock, Cruver opened the door, and two men Nixon did not know entered the house. Nixon did not usually let strangers come in the house, and so he immediately approached them in an attempt to back them out of the house. As the two intruders reached into their pockets, Cruver grabbed one of the men and began struggling with him. As Nixon approached the other man, the intruder pulled out a gun and began shooting, hitting Nixon in the back.

After being wounded, Nixon went to try to wake up his father in the bedroom. Because the gunman was following him, however, Nixon pretended to be dead by lying on the floor behind the bedroom door. The gunman entered the bedroom and shot Nixon's father while he slept, once in the arm and once in the back; the latter shot was fatal. Cruver died from a gunshot wound to the head. A neighbor heard the gunshots and then saw two men run from the house and jump into the back seat of a white car. A police officer responding to the scene found Appellant's cell phone outside the house.

Robinson testified that when he and Appellant went to Nixon's door, Robinson knocked and identified himself as "Steve," someone opened the door, and they entered the house without being told to come in. Robinson then pulled out his gun and put it to the back of Cruver's head. Cruver grabbed for the gun, and the two men began struggling. As they struggled, Robinson heard a single gunshot, followed by two more. Shortly thereafter, Appellant stepped over Robinson and Cruver, who were still wrestling, and shot Cruver in the head. The men then drove back to Williams's house, where Appellant cleaned blood off the two guns in the sink. Prothro and Robinson both testified that Appellant said that he had shot everyone in the house.

Appellant, Robinson, Smith, and Washington then drove back to Robinson's father's house in South Carolina. On Christmas Day, the men planned to return to Ohio. Before doing so, Appellant, Robinson, and Washington left the house in the rental car to get marijuana and gas. Smith stayed at the house. A South Carolina police officer spotted the rental car based on a lookout for murder suspects issued by Georgia law enforcement authorities, and he pulled his police car behind the rental car. Robinson, who was driving, turned into a private driveway, got out, and ran away. Appellant and Washington

were arrested. Robinson later turned himself in. Smith tried to leave town on a Greyhound bus but was apprehended.

Police obtained a warrant to search the car and found two black t-shirts, one of which had Cruver's blood on it, and black ski masks. Nine-millimeter and .357-caliber handguns were found under the sofa cushions at Robinson's father's house. Three projectiles recovered from the crime scene and from David Nixon's body were fired from the .357 revolver. In phone calls that Appellant made from jail, which were recorded, he admitted that he went to Nixon's house to commit a robbery.

At trial, Appellant testified, asserting that he and his associates were at Nixon's house to buy marijuana, not to commit a robbery, and that when Robinson entered the house, Appellant noticed two puppies in a cage. He wanted to ask about buying a puppy, he claimed, but as he was going in the house, he heard a gunshot and ran back to the car.

Viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)). Appellant does not contend otherwise as to the felony murder and aggravated assault charges, but he argues that the evidence was insufficient to support his burglary conviction because, he claims, the victims authorized him to enter the house. We disagree.

OCGA § 16-7-1 (b) provides that a person commits the crime of burglary "when, without authority and with the intent to commit a felony or theft therein, he . . . enters or remains within [the] . . . dwelling house of another." The indictment, which the trial court's jury instructions followed, charged Appellant only with entering Nixon's house without authority, not with remaining in the house without authority (so the conviction cannot be defended on that ground, as the Attorney General seeks to do). Appellant argues that there was no evidence of forced entry, and instead the evidence was that Cruver opened the door and let Appellant and Robinson in after they knocked. But merely opening one's front door in response to a knock is not, ipso facto, an invitation to the visitors to come into one's home — particularly to strangers who come knocking in the middle of the night. The evidence that Appellant and Robinson approached Nixon's house armed and with the intent to rob, that Robinson knocked and gave a false name to entice Cruver to open the door, that

they entered the house without being invited in, that Nixon immediately attempted to make the strangers leave the house, and that the intruders drew their guns as they entered, was sufficient to authorize a rational jury to find beyond a reasonable doubt that Appellant entered the house without authority. See *Redwine v. State*, 280 Ga. 58, 59 (623 SE2d 485) (2005) (holding that "forced entry is not an element of burglary"); *Smith v. State*, 287 Ga. App. 222, 226 (651 SE2d 133) (2007) (holding that "[t]he fact that the victim opened the door even though she did not see anyone when she looked through the glass pane does not mean that she authorized [the defendant's] entry into her home").

2. Appellant contends that the affidavit the police submitted to the South Carolina magistrate failed to present sufficient reliable evidence to support a finding of probable cause to search the rental car. Thus, Appellant argues, the trial court erred in denying his motion to suppress the evidence seized during the execution of the search warrant the magistrate issued. In his motion to suppress, however, Appellant objected to this evidence only on the grounds that the car was illegally stopped and then was searched without consent and without a search warrant. And at the hearing on the motion, Appellant objected only on the grounds that there was no justification for stopping the car and that the officers who conducted the search were not certified in South Carolina, where the search was conducted. Because Appellant did not challenge the sufficiency of the search warrant affidavit in his motion to suppress or at the suppression hearing, he is barred from raising that issue on appeal. See *Bryant v. State*, 288 Ga. 876, 894 (708 SE2d 362) (2011).

3. Appellant contends that the trial court erred in denying his motion to suppress a post-arrest statement that he made to a detective in which he admitted that he had been in a white car, had been at Cherelle Williams's apartment, and had lost his cell phone in Atlanta. Appellant maintains that his statement should have been suppressed because, according to his testimony at the *Jackson-Denno* hearing, the detective ignored Appellant's repeated invocation of his right to counsel during the interview. However, the detective testified at the hearing that Appellant never invoked his right to counsel. The detective also testified that Appellant was advised of his *Miranda* rights and appeared to understand those rights, said he wanted to speak with the detective, and signed a waiver-of-rights form. The trial court found that Appellant's testimony that he invoked his right to counsel was not credible and that Appellant understood his rights

and freely and voluntarily waived them.

> The trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances. On appeal, we accept the trial court's findings on disputed facts and credibility of witnesses unless clearly erroneous, but independently apply the legal principles to the facts.

*Watkins v. State*, 289 Ga. 359, 363 (711 SE2d 655) (2011) (citations and punctuation omitted). Here, the trial court's decision to disbelieve Appellant's testimony was supported by the record, including evidence that the same detective had stopped an interview of co-defendant Robinson when Robinson requested counsel. The record also supports the court's ruling that Appellant's statement was voluntary and was made after a knowing and intelligent waiver of his *Miranda* rights.

4. Appellant contends his conviction for aggravated assault with intent to rob Cruver should be merged for sentencing into his conviction for the felony murder of Cruver, for which the crime of aggravated assault with a deadly weapon served as the underlying felony. We disagree.

To determine if one crime is included in and therefore merges with another,

> we apply the "required evidence" test set forth in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006). Under that test, we examine "whether each offense requires proof of a fact which the other does not." *Lucky v. State*, 286 Ga. 478, 481 (689 SE2d 825) (2010).

*Long v. State*, 287 Ga. 886, 888 (700 SE2d 399) (2010). Here, the aggravated assault with intent to rob charge required the State to prove that Appellant had the intent to rob, see OCGA § 16-5-21 (a) (1), which the State did not need to prove for the felony murder conviction based on aggravated assault with a deadly weapon, see OCGA §§ 16-5-1 (c); 16-5-21 (a) (2). And the felony murder count here required the State to prove that Appellant caused the death of the victim, see OCGA § 16-5-1 (c), and that he used a deadly weapon, see OCGA § 16-5-21 (a) (2), neither of which the State had to prove for the conviction of aggravated assault with intent to rob, see OCGA § 16-5-21 (a) (1). Accordingly, the trial court did not err in sentencing Appellant on both of these convictions.

5. Finally, Appellant argues that the trial court erred in sentencing him on both of his convictions for the aggravated assault of

Reginald Nixon, one with a deadly weapon and the other with intent to rob, claiming again that the convictions should be merged for sentencing. Again, however, under the *Drinkard* test, these two crimes do not merge. Aggravated assault with intent to rob requires proof of a fact — the intent to rob — that aggravated assault with a deadly weapon does not, and aggravated assault with a deadly weapon requires proof of a fact — the use of a deadly weapon — that aggravated assault with intent to rob does not. See OCGA § 16-5-21 (a) (1), (2). Accordingly, the trial court did not err in sentencing Appellant on both of these aggravated assault convictions.

To the extent that *Duncan v. State*, 290 Ga. App. 32, 33-34 (658 SE2d 780) (2008), applied the "actual evidence" test that this Court rejected in *Drinkard* to hold that one of these aggravated assault crimes merges into the other, that case is disapproved. And to the extent that the Court of Appeals relied on the "actual evidence" test before *Drinkard* to merge these two crimes, see, e.g., *Adcock v. State*, 279 Ga. App. 473, 475 (631 SE2d 494) (2006); *Maddox v. State*, 277 Ga. App. 580, 582 (627 SE2d 166) (2006), those cases should no longer be relied on.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 18, 2013.

*Jennifer A. Trieshmann*, for appellant.

*Peter J. Skandalakis*, District Attorney, *Anne C. Allen*, Assistant District Attorney, *Samuel S. Olens*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *David A. Zisook*, Assistant Attorney General, for appellee.